In the United States District Court
for the Eastern District of Virginia
Alexandria Division

COMPLAINT



FILED
AUG - 1 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Catherine Gierbolini

101 6th Ave

Huntington Station, NY 11746

631-747-3225

Plaintiff

vs.

Board of Directors
Science Application International Corporation,

1710 SAIC Drive
McLean, VA 22102

703-676-4300

Defendant

Case No: 1:13-cv-953
CMH/TCB

COMPLAINT

The Plaintiff Catherine Gierbolini requests that the United States District Court for the Eastern District of Virginia hear the case of Gierbolini vs. Board of Directors Science Application International Corporation (from here on out referred to as SAIC) as this action is brought pursuant to violations of the United States Constitution, 29 U.S.C. § 206(d), 42 U.S.C. § 703, and Public Law 107-174, Negligence in following the SAIC Board of Director By-Laws section 3.01, Ethics policy, Corporate Credo, Corporate Governance Guidelines and Code of Conduct. The Board of Directors in all written communications claims legal and ethical responsibility for the happenings within their company and for their representatives. At no time in the past 30

months have any of the Board of Directors or designated SAIC Representatives contacted the Plaintiff to conduct any investigations on any of the claims seen in docket number 1:12-cv-1459 and while this plea is linked to the plea against the company, the company failed to conduct any investigations per their own policies and standards of operation. In fact, by not conducting any investigations into the Plaintiff's complaints they have grossly violated the Plaintiff's civil rights as well as acting negligently by failing to comply with their own policies, causing the Plaintiff economic devastation and emotional hardship. Meanwhile the Plaintiff continued to attempt to exhaust all administrative remedies in her attempts to work amicably with the designated SAIC representatives.

This claim is to ensure that the Plaintiff finds justice and ensures that all future employees of SAIC are treated with the care and respect they deserve. The Plaintiff seeks to emphasize that the Board of Directors has a responsibility not only to its customers but also its employees. Each and every employee is entitled to have their claims investigated appropriately - to this date Ms. Gierbolini's claims have not been investigated. The Plaintiff merely seeks to ensure that the role of the Board of Directors as quoted on its website, as stated below, is enforced. *"Role of the Board: The Board of Directors governs and provides oversight over the affairs of the Company for the benefit of our stockholders, as well as our other stakeholders, particularly our employees, customers and the communities in which we do business."*

The Plaintiff, Ms. Gierbolini, asserts that the Board of Directors acted negligently in its actions (or more specifically – inaction) with handling her employment claims while employed with SAIC. The Plaintiff with show that the Board of Directors acted negligently when it (1) had a duty to Ms. Gierbolini, (2) that the Defendant's action (or failure to act) was not what a

reasonably prudent person/Board of Directors would have done, and (3) that the damages were directly caused by the negligence. The Plaintiff will demonstrate that (1) the Board of Directors owes a duty of care to its employees, (2) the Board of Directors failed to take any action meaningful action (as any Board of Directors would) in the investigation of the Plaintiff's employment concerns, and (3) as a result, Ms. Gierbolini, suffered physical, emotional and financial hardship as a direct result of the Board of Directors inaction.

The Board of Directors should be held accountable and found negligent for hiding behind their power while their company and representatives committed illegal and unethical practices against Ms. Gierbolini. Their actions are no different from that of an accomplice to an attempted murder because as we know many people have taken their own lives in situations like this as seen in the case of "Kevin Morrissey from the Virginia Quarterly Review." The bullying in that case was so bad that Mr. Morrissey took his own life. Mr. Morrissey was a victim of corporate bullying – he made several attempts to communicate and seek amicable solutions through the appropriate channels but when no one would help him he wound up feeling so desperate that instead of fighting for his legal rights – he took his own life. Ms. Gierbolini has made numerous attempts to work with the SAIC Board of Directors and to no avail, but instead of taking desperate measures – Ms. Gierbolini has decided to have faith and trust in the American Justice System.

The BOD's actions were deliberate and negligent when they allowed their company and representatives to attempt to destroy Ms. Gierbolini, physically, financially and emotionally, by failing to investigate any and all of her claims and attempting to ensure that she would not prosper after her termination. The Board of Directors and its representative ensured that the Plaintiff would not find gainful employment, subsequently resulting in Ms. Gierbolini losing her

reputation and assets that took her 32 years to obtain (these things included, but surely are not limited to, her home, heirlooms and investments). These actions in many employment cases have caused so much distress on victims that the victims don't see any way out other than to kill themselves. This is to be expected when individuals conspire to deliberately take an individual's livelihood and sense of value and purpose from them. Situations like these continue to grow in number; as a result, there has been an increase in the number of Corporate Bullying activists, a plea for recognizing and penalizing corporate representatives appropriately, as well as a call to hold these Corporations accountable for their negligence.

The Board of Directors governs the actions of SAIC and all of its work although they may tell you situations like these are mundane and not their responsibility; however they are the highest level of leadership in a company; therefore, they are absolutely in control of the **FINAL ACTIONS** of their representatives.

In this case the Board of Directors themselves acted contradictory to their own published By Laws, Federal employment laws, as well as, their Corporate Ethics and Code of Conduct. The following information will serve as the facts of this case:

1. On September 1st, 2009 the Plaintiff filed an ethics complaint utilizing SAIC corporate procedures
2. June 2010 the Plaintiff was transferred which is contradictory to Federal Employment laws covered under Title VII, also in direct violation of the Defendant's corporate policies.

3. August 2010 the Plaintiffs subordinate was allowed by local leadership to take all of the Plaintiffs personal affects and toss them in a cardboard box because the subordinate the Plaintiffs work area.

4. September 26, 2011 the Plaintiff reports to her supervisor that she has a subordinate committing Federal time card fraud.

5. October 2nd, 2010 the Defendants are advised that the Plaintiff was prescribed medication to deal with what at the time was thought to be a minor medical issue, but then turned into a full hysterectomy.

6. October 6th 2010 the Plaintiff's immediate supervisor attempts to write her up without real cause and when a rebuttal is presented the Plaintiff is then advised that the write up would be destroyed yet this write-up continues to keep appearing.

7. October 18th, 2010 the Plaintiff attempts to file a complaint with the EEOC.

8. October 21st, 2010 the Plaintiff requests Housing Overseas Living Allowance (HOLA) charts because she is advised of potential fraud in her section and attempts to acquire the information to conduct an internal audit. She is told it will be provided for her the next day.

9. October 22, 2010 the Plaintiff was still ill and while she was attempting to fill out disability paperwork, she was called into her immediate supervisor's office and suspended without cause and escorted off the premises by Corporate Security **giving the perception that the Plaintiff had committed a horrible wrong doing.** (There were approximately 13 other company Headquarters in the same facility.)

10. October 24th, 2010 the Plaintiff makes several attempts to contact higher officials within the SAIC leadership in accordance with the Defendants Corporate policies and no one responds to her until October 27th, 2010.

11. October 25th, 2010 the Plaintiff was then terminated and told her contract was being discontinued for "<u>Convenience</u>" and that she needs to consider this her 30 day's notice. (The Plaintiff was provided with a ticket home and told to leave as soon as possible with NO information as to why this was happening and no regard to her physical condition and she was not allowed to return to her work area to collect personal affects).

12. October 27th, 2010 the Defendants Corporate Ethics representative tell the Plaintiff that the matter will be quickly investigated and that the investigation would be completed in the 30 days so that she could take care of her medical issues.

13. November 22nd, 2010 the Plaintiff communicates with the Corporate Ethics department to get a status check on the investigations because as of yet she had not heard from anyone.

14. November 27th, 2010 the Plaintiff is told her termination date would be extended (this would be the first of five different termination dates provided to her over the course of 12 weeks.) Thus creating emotional and financial strain on the Plaintiff, because the Plaintiff was paid out all benefits but was still employed so she could not access investments, claim unemployment, solicit higher education benefits, Cobra and because she was still being investigated according to corporate representatives she was reluctant to look for other employment although she did. These actions would continue through February 7th, 2011, however she was advised that investigations were still pending through March 15th 2010 or thereabouts, but no conclusions or information was shared with the Plaintiff as to the results of investigations.

15. February 2011 the Plaintiff receives a call from the Government Contracting Officer assigned to the Defendants contract and is told that she was advised that the Plaintiff had been dismissed because "she was fighting" with little to no information provided.

16. March 2011 a potential employer tries to hire the Plaintiff and she fails her EKG because of the stress induced by the situation with SAIC.

17. April 2011 the Defendants legal counsel offers the Plaintiff's attorney $20,000.00 to settle all claims. This settlement was denied because at this point the financial burden of the actions committed by the Defendant's Company well exceeded that amount.

18. June 2011 the Defendant's representatives fail to accept mediation provided by the EEOC.

19. February 2012 the Plaintiff is offered a position with a new company but the position will be given to her based on local verification of employment. The Plaintiff never hears back from this potential employer.

20. April 15, 2012 another potential employer attempts to obtain verification of employment and receives nothing from the Defendants representatives.

21. April 2012 the Plaintiff re-engages with the Defendant's legal counsel and at this time she is offered low $100,000's verbally in a phone conversation. Again this amount is rejected because again the Defendants actions have burdened the Plaintiff so much financially that this amount is NOT enough and because the Plaintiff now believes that the Defendant and their representatives are committing Liable and Slander.

22. August 2012 the Plaintiff attempts to sue the Defendants Company and unfortunately the case is dismissed see docket # 1:12-CV-558 (CMH/TCB).

23. September 2012 the Plaintiff contacts the Contractor Integrity Solutions because after the Defendant lost the NYC vs. SAIC case – this oversight company was assigned to them for ethics and compliance. Unfortunately this company failed to appropriately investigate any claims.

24. October 2012 the Plaintiff contacts the SAIC Board of Directors directly and gives them information regarding her case and again they throw her into dealing with their designated legal counsel. This would be the final attempt to give the Defendant and their representatives an opportunity to work amicably with the Plaintiff.

23. December 2012 a new complaint is filed see docket #**1:12-cv-1459 (LMB/IDD)**

24. January 15, 2013 the Plaintiff loses her home

25. February 2013 a specific detailed complaint is filed against the Defendant, please see docket #1:13-cv-103 (LMB/IDD)

The American Justice system is to serve and protect individuals against injustices committed against them that would inhibit or alter an individual's rights based on the American Bill of Rights and the United States Constitution as well as Federally Mandated employment laws. The Defendants should NOT be immune from being held accountable in this case because of their social, financial or business stature they are just as guilty as their designated representatives in this case.

The lack of attention or action committed by the Defendant based on the FACTS provided above show that the Defendant was negligent to intervene at any point in correcting any and all wrong doings which makes them just as responsible as their company and qualifies them to being an accomplice to the wrong doings of their personnel. There are many ways to assassinate an

individual and the Representatives at SAIC under the Guidance of the Board of Directors attempted to assassinate the Plaintiff in every way imaginable while not literally pulling a trigger.

In closing the Plaintiff requests that the Court evaluate the above information and recognize that the Board of Directors has a responsibility for ensuring that selected representatives uphold the policies and procedures set forth by them in the Corporate Ethic Policy, Board of Director By-laws, Corporate Credo and Code of Conduct instead of committing acts of corporate bullying, especially when the plaintiff acted ethically and in accordance to all of the Policies that were set forth by the Board of Directors.

*[signature]*

Catherine Gierbolini

101 6th Ave.

Huntington Station, NY 11746

631-747-3225

**In the United States District Court
for the Eastern District of Virginia
Alexandria Division**

Catherine Gierbolini
Plaintiff's Name

v.  Civil Action No.

The Board of Directors for Science Applications International Corp
Defendant's Name

### NOTICE

PLEASE TAKE NOTICE that on Friday *(enter date for hearing)* _____, at

10:00 a.m., or as soon thereafter as the undersigned may be heard, the plaintiff(s) will present to the

Court the Motion *(enter motion type)* _____.


_____
*(Signature)*
[signature]
_____
*Catherine Gierbolini
101 6th ave
Huntington Station,
NY 11746
631-747-3225*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing, Civil "Negligence" Complaint Gierbolini Vs The Board of Directors for Science Applications International Corporation was mailed this 31 Day of July 2013 to:

The Board of Directors for SAIC
C/O Brian Liss
1710 SAIC Dr.
McLean, Virginia 22102
AND
ISLER DARE RAY RADCLIFFE & CONNOLLY, P.C.
1945 Old Gallows Road, Suite 650
Tysons Corner
Vienna, Virginia 22182

_____
(Your Signature)

### Instructions

YOU must send a copy of every motion, pleading or document to the defendant(s) or counsel for defendant(s). If you do not send a copy to the defendant(s) or counsel for the defendant(s), the court will not be able to consider your document.

You must prepare and submit one certificate of service for EACH motion, pleading, or document you wish to have considered by the court.

Complete each blank as directed:

(1) Describe the document you are submitting to the court and sending to the defendant(s). (Remember: you should attach a Certificate of Service to each motion, pleading, or document you wish to have considered by the court.)

(2) Day of the month that you give the document to officials for mailing to the defendant(s) or counsel for the defendants(s).

(3) Month and year.

(4) Name of person(s) to whom you are sending a copy of the document. If you send it directly to the defendant(s), list each defendant to whom you send a copy. If you send it to counsel for the defendant(s), list only the name(s) of counsel.

(5) Address(es) that copy is being mailed to.

**NOTE:** YOU MUST SIGN THIS FORM. The court will not accept this form without an original signature.